IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALVIN S., | ) | |
| | ) | |
| Plaintiff, | ) | No. 21-cv-3781 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey I. Cummings |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Alvin S. ("Claimant") moves to reverse the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for supplemental security income ("SSI"). The Commissioner filed a response seeking to uphold the decision to deny benefits. The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636(c) and this Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §1383(c)(3). For the reasons described herein, Claimant's motion to reverse the decision of the Commissioner, (Dckt. #17), is granted and the Commissioner's motion to uphold the decision, (Dckt. #20), is denied.

I.  BACKGROUND

   A.  **Procedural History**

On March 26, 2019, Claimant (then fifty-three years old) filed an application for SSI, alleging disability dating back to April 5, 2018, due to limitations from osteoarthritis and generalized anxiety disorder. (Administrative Record ("R.") 214). His claim was denied

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to plaintiff only by his first name and the first initial of his last name. Acting Commissioner of Social Security Kilolo Kijakazi has been substituted as the named defendant. Fed.R.Civ.P. 25(d).

initially and upon reconsideration. (R. 15). Claimant filed a timely request for a hearing, which was held on December 7, 2020, before Administrative Law Judge ("ALJ") Karen Sayon. (R. 34-79). On December 17, 2020, the ALJ issued a written decision denying Claimant's application for benefits. (R. 13-31). The Appeals Council denied review on May 11, 2021, (R. 1-7), leaving the ALJ's decision as the final decision of the Commissioner. This action followed.

**B.     The Social Security Administration Standard to Recover Benefits**

To qualify for disability benefits, a claimant must demonstrate that he is disabled, meaning he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the SSA determines whether a claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at *2 (N.D.Ind. Oct. 22, 2019). If a claimant establishes that he has one or more physical or mental impairments,

2

the ALJ then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, he is considered disabled, and no further analysis is required. If the listing is not met, the analysis proceeds. 20 C.F.R. §404.1520(a)(4)(iii).

Before turning to the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), or his capacity to work in light of the identified impairments. Then, at step four, the SSA determines whether the claimant is able to engage in any of his past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, he is not disabled. *Id.* If the claimant cannot undertake his past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform given his RFC, age, education, and work experience. If such jobs exist, the claimant is not disabled. 20 C.F.R. §404.1520(a)(4)(v).

### C. The Evidence Presented to the ALJ

Claimant's appeal focuses only on limitations stemming from his mental impairments and the Court will narrow its discussion of the evidence accordingly.

#### 1. Evidence from Claimant's Medical Records

Claimant was diagnosed with generalized anxiety disorder ("anxiety") on December 23, 2019. (R. 440). He has reported experiencing panic attacks, sad moods, low energy, disinterest in activities, feelings of hopelessness, poor concentration, changes in appetite, frequent worry, restlessness, and intrusive thoughts. (R. 461, 472). Claimant also has a history of heroin use.

On January 18, 2019, he presented to the hospital with "acute withdrawal symptoms." (R. 335). At the time, he reported having used $60 of heroin per day for ten years. (*Id.*). On July 4, 2019, Claimant was taken to the emergency department with an altered mental status. (R. 367). He informed the treating physician that he "snorts heroin and has been doing so for [fifteen years]." (*Id.*). He was diagnosed with a heroin overdose. (R. 367-68).

### 2. Consultative Examiner Findings

Phyllis Tolley, Psy.D., performed a psychological consultative examination of Claimant on August 21, 2019. At the time, Claimant reported feelings of depression, stress, low energy, and trouble focusing. (R. 396). He stated that he used heroin "a few times a week," and could not complete tasks in an efficient and appropriate manner because he "might get depressed and mad." (*Id.*). Although Claimant was alert, oriented, cooperative, and attentive for most of the examination, his delayed recall was poor, as was his fund of information, abstract ability, judgment, and insight. (R. 397). At one point, he burst into tears and asked the examiner why she was picking on him with her questions. (*Id.*). Dr. Tolley concluded that Claimant was a "somewhat reliable informant" and did not have the capacity to manage his own funds. (*Id.*).

### 3. Opinions from State Agency Consultants

State agency psychological consultant Steven Fritz, Psy.D., reviewed Claimant's file on September 13, 2019. He found that Claimant was mildly limited in understanding, remembering, and applying information; moderately limited in interacting with others; moderately limited in concentrating, persisting, and maintaining pace; and mildly limited in adapting or managing himself. (R. 85). He further found that Claimant's anxiety was severe and would limit his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without

4

being distracted by them; interact appropriately with the general public; and set realistic goals or make plans independently of others. (R. 90-91). He concluded that Claimant "has an anxiety and opioid and alcohol use disorder for which [he is] receiving treatment," and "has the cognitive capacity to perform and sustain one- and two-steps tasks of a routine and repetitive type." (R. 92). State agency psychological consultant Howard Tin, Psy.D., reviewed Claimant's file on August 19, 2020, and concurred with Dr. Fritz's findings. (R. 103-11).

### D. The ALJ's Decision

The ALJ applied the five-step inquiry required by the Act in reaching her decision to deny Claimant's request for benefits. At step one, she found that Claimant had not engaged in substantial gainful activity since his application date of March 26, 2019. (R. 17). At step two, she determined that Claimant suffered from the severe impairments of degenerative joint disease of the right shoulder and a right-hand impairment. (R. 18). She further found that Claimant's anxiety was non-severe, explaining that it caused only a mild limitation in each functional category (understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself). (R. 19-20).

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the Commissioner's listed impairments. (R. 20). Before turning to step four, she found that Claimant had the residual functional capacity ("RFC") to perform medium work with various physical restrictions and no mental restrictions. (R. 21). Based on these conclusions, the ALJ determined at step four that Claimant was capable of performing past relevant composite work consisting of elements of work as a cook helper, banquet waiter, and informal waiter. (R. 27). Accordingly, the ALJ

concluded that Claimant had not been under a disability since the date his application was filed. (R. 28).

## II. STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and be free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to his conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant

6

is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

### III. ANALYSIS

Claimant raises only one argument in support of remand: that the ALJ failed to properly evaluate the limiting effects of his mental impairment. The Court agrees.

#### A. The ALJ's mental RFC findings were unsupported by substantial evidence.

An ALJ's RFC findings are intended to capture "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1); *see also Moon v. Colvin*, 763 F.3d 718, 720 (7th Cir. 2014), *as amended on denial of reh'g* (Oct. 24, 2014) ("Residual functional capacity is the extent to which a person can still work despite having health problems."). The ALJ bears "final responsibility" for determining a claimant's RFC, *Fanta v. Saul*, 848 Fed.Appx. 655, 658 (7th Cir. 2021), and "is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians" when doing so, *Whitehead v. Saul*, 841 Fed.Appx. 976, 982 (7th Cir. 2020). Nonetheless ALJs may not determine the significance of medical findings themselves, *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018), and remand is required when ALJs "succumb to the temptation to play doctor and make their own independent medical findings," when assessing a claimant's RFC. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996); *see also Israel v. Colvin*, 840 F.3d 432, 439 (7th Cir. 2016).

Courts will often find that an ALJ has committed such an error when she: (1) creates an "evidentiary deficit" by rejecting every expert opinion in the record and then (2) fills that deficit with her own interpretation of medical evidence. *See, e.g., Suide v. Astrue*, 371 Fed.Appx. 684, 689-90 (7th Cir. 2010) (an evidentiary deficit occurs when the ALJ rejects all physician opinion evidence); *Gary R. Kijakazi*, No. 20 C 6109, 2022 WL 4607581, at *17 (N.D.Ill. Sept. 30, 2022)

(same); *Darlene M. v. Kijakazi*, No. 19 CV 6389, 2021 WL 3773291, at *5 (N.D.Ill. Aug. 25, 2021) (same); *Joel B., o/b/o Melissa B. v. Kijakazi*, No. 1:21-cv-01894-MJD-SEB, 2022 WL 2589785, at *6 (S.D.Ind. July 7, 2022) ("[W]ithout at least some reliance on any medical opinions, substantial evidence is lacking from the ALJ's RFC determination."); *McDavid v. Colvin*, No. 15 C 8829, 2017 WL 902877, at *5 (N.D.Ill. Mar. 7, 2017) (when the ALJ discounted the only medical opinions setting forth RFC determinations, "she was left with an evidentiary record that did not support her RFC determination").

Such is the case here. As noted above, the state agency psychological consultants found that Claimant was moderately limited in interacting with others and moderately limited in concentrating, persisting, and maintaining pace. (R. 85, 103). They further found that, in order to accommodate these limitations, Claimant should be restricted to jobs involving only one- to two-step tasks. (R. 92, 110). The ALJ rejected these opinions as "not persuasive," explaining that they were inconsistent with the medical record and "relied too heavily" on the consultative examination. (R. 24-25). Instead, she found that Claimant had only a *mild* limitation in each functional category and that these limitations required *no* mental RFC restrictions whatsoever. (R. 19-21).

While the Commissioner argues that the ALJ's *rejection* of the consultants' opinions was reasonable, (Dckt. #20 at 7), this assertion – even if true – does not end the Court's inquiry. Instead, the Court must ascertain what evidence (if any) the ALJ relied on in the *absence* of expert opinions to support her finding that Claimant had only mild – as opposed to more severe – limitations in each functional category and required *no* mental RFC accommodations. On the record here, the only reasonable inference to be drawn is that the ALJ relied on her own "independent deductions" to formulate Claimant's RFC. *See Kara v. Kijakazi*, No. 20-cv-344,

8

2022 WL 4245022, at *3 (E.D.Wis. Sept. 15, 2022) ("[T]he 'logical bridge' between the data and the RFC cannot comprise only the ALJ's independent deductions because the ALJ is not qualified to make those deductions. Yet independent deduction is the only way to explain the connection between the record and the RFC determination in this case.").

Because she relied on her own independent reasoning, the ALJ impermissibly "played doctor" when assessing Claimant's mental RFC and the case must be remanded for further consideration. *See Darlene M.*, 2021 WL 3773291, at *5 (an ALJ "cannot reject all the relevant medical RFC opinions and then construct a 'middle ground' and come up with [her] own RFC assessment without logically connecting the evidence to the RFC findings"); *Pearce v. Berryhill*, No. 16 C 9820, 2017 WL 4928511, at *5 (N.D.Ill. Oct. 31, 2017) (remanding where the ALJ dismissed all medical opinions related to the claimant's mental health and offered her own opinion that claimant's "depression was not severe and did not warrant any mental limitations in his RFC"); *Brown v. Berryhill*, No. 15 C 10160, 2017 WL 987366, at *7 (N.D.Ill. Mar. 14, 2017) (finding the ALJ's rejection of the medical experts' mental health opinions "left an 'evidentiary deficit' that the ALJ was not entitled to fill with h[er] own lay opinion"); *Norris v. Astrue*, 776 F.Supp.2d 616, 637 (N.D.Ill. 2011) ("ALJs are not permitted to construct a 'middle ground' RFC without a proper medical basis.").

On remand, if the ALJ again finds that the state agency consultants' opinions are inconsistent with the record – as would be her prerogative under 20 C.F.R. §404.1520c(a) – she should summon an additional psychological expert to interpret the evidence rather than interpreting it herself. *See Kara*, 2022 WL 4245022, at *3 ("[W]hen [an ALJ's rejection of medical opinions] results in a complete absence of valid expert opinions, the ALJ should summon a medical expert who can review the record and offer an opinion grounded in the

evidence."); *Jennifer B. v. Saul*, No. 1:19-cv-347, 2020 WL 2520996, at *8 (N.D.Ind. May 18, 2020) (same).

> B. **On remand, the ALJ should also consider the effects of Claimant's heroin use pursuant to Section 423(d)(2)(c) of the Social Security Act.**

Although the above error is enough to warrant reversal, there is an additional issue related to the analysis of Claimant's mental RFC that the ALJ should address on remand. As noted above, the ALJ's primary reason for discounting the findings of the state agency psychological consultants was that they "relied too heavily on the consultative examination." (R. 25). When explaining why this reliance was problematic, the ALJ observed that Claimant was still using heroin at the time the examination was performed. (R. 24). Although Claimant did not raise this issue, the Court finds the ALJ's reasoning in this regard was an improper analysis of the implications arising from his heroin use.[2]

It is well settled that neither alcoholism nor drug addiction constitutes a valid basis for obtaining social security benefits. *Harlin v. Astrue*, 424 Fed.Appx. 564, 567 (7th Cir. 2011). Therefore, when a claimant has a potentially disabling illness *and* is a substance abuser, ALJs must determine whether the claimant would still be disabled "were [he] *not* a substance abuser." *Id.*, *quoting Kangail v. Barnhart*, 454 F.3d 627, 628-29 (7th Cir. 2006) (citing 20 C.F.R. §416.935) (emphasis added). To do so, ALJs perform a two-step analysis:

> [T]he ALJ must first determine whether a claimant is disabled and, if so, whether there is medical evidence of alcoholism or drug addiction. If there is such evidence, then the ALJ must determine whether the alcoholism or drug addiction is a contributing factor material to the disability determination, in other words, whether the claimant would no longer be disabled if he stopped using drugs or alcohol.

---

[2] Courts can *sua sponte* address issues in social security cases that a party has not raised. *See, e.g., Kristine S. v. Saul*, No. 19 C 1485, 2020 WL 4586115, at *7 (N.D.Ill. Aug. 10, 2020) (citing cases).

*Mikolajczyk v. Colvin*, No. 2:12-CV-86-PRC, 2013 WL 5460156, at *11 (N.D.Ind. Sept. 30, 2013) (citing 20 C.F.R. §§404.1535(b)(2)(i), 416.935(b)(2)(i)). In other words, the ALJ must first determine whether the Claimant is disabled. Only then, can she parse which limitations stem from Claimant's substance use. If the remaining limitations would not prevent work, the substance abuse is considered a "contributing factor" and the claimant is not disabled.

Here, the ALJ failed to follow these steps and, as a result, she did not "adequately disentangle[] the effects of [Claimant's] drug abuse from those of [his] other impairments." *Harlin*, 424 Fed.Appx. at 568. Her suggestion that the consultative examination was not reliable *because* Claimant was using heroin "muddle[s] the two distinct steps" of the inquiry. *Rutherford v. Astrue*, No. 10 C 8016, 2013 WL 500842, at *7 (N.D.Ill. Feb. 11, 2013) ("Here, the ALJ muddled the two distinct steps together, essentially reasoning that, because the drug abuse played a role in Mr. Rutherford's impairments, the impairments could not be considered disabling."); *see also Pinson v. Colvin*, No. 12-C-0395, 2013 WL 4647795, at *3 (E.D.Wis. Aug. 29, 2013) ("Regulation 404.1535 highlights the need for two separate inquiries."). Due to this muddling, it is unclear how the ALJ determined which – if any – of Claimant's limitations resulted from his heroin use.

This, too, constitutes reversible error. *Pinson*, 2013 WL 4647795, at *3 ("Instead of determining overall disability and only then analyzing whether cocaine addiction was a contributing factor, the ALJ merged the two stages of consideration, requiring reversal."); *Rutherford*, 2013 WL 500842, at *6 ("Even assuming Mr. Rutherford had been abusing drugs or alcohol during the time period covered by the assessment, the ALJ cannot simply reject the opinion on that basis."); *Hart v. Astrue*, No. 11 C 0043, 2012 WL 639530, at *3 (N.D.Ind. Feb. 27, 2012) ("[T]he ALJ's decision fails to provide substantial evidence to support the conclusion

11

that Hart would not remain disabled, because the ALJ did not separate Hart's compliance, or, as the case may be, his noncompliance, with his medications from Hart's alcohol and drug use."); *Harlin*, 424 Fed.Appx. at 568 ("The case must be remanded so that the ALJ can reconsider whether Harlin has shown that she would be disabled in the absence of her drug abuse.").

Furthermore, the Court finds that this error is not harmless. *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) ("An error is harmless only if we are convinced that the ALJ would reach the same result on remand."). While it appears that the state agency consultants considered Claimant's heroin use when crafting their mental RFC, (R. 92, 110) (noting that Claimant "has an anxiety *and* opioid and alcohol use disorder"), they did not clarify which disorder their one- to two-step restriction was intended to address. Accordingly, the Court cannot determine whether the one- to two-step restriction would have been excluded had the ALJ properly disentangled any heroin-related restrictions from those related to Claimant's anxiety. Moreover, Claimant's past relevant work – which the ALJ found he could perform – requires a Reasoning Development Level of 2 or higher, which is inconsistent with a one- to two-step restriction. *See, e.g., Deborah B. v. Kijakazi*, No. 20-cv-7729, 2022 WL 1292249, at *2 (N.D.Ill. Apr. 29, 2022) (citing cases).

## CONCLUSION

For the foregoing reasons, Claimant's motion to reverse or remand the final decision of the Commissioner, (Dckt. #17), is granted and the Commissioner's motion to uphold the decision, (Dckt. #20), is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**ENTERED:  March 14, 2023**

**Jeffrey I. Cummings
United States Magistrate Judge**